**FORM TO BE USED BY A PRISONER IN FILING A CIVIL RIGHTS COMPLAINT**

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

(1) Kashif M. Robertson  LF 2211
(Name of Plaintiff)     (Inmate Number)

P.O. Box 1000, Houtzdale, PA, 16698-1000
(Address)

(2) _____
(Name of Plaintiff)     (Inmate Number)

_____
(Address)

(Each named party must be numbered,
and all names must be printed or typed)

vs.

(1) Darrin A. Bates

(2) Nicholas Ishman #9

(3) Joshua Hammer
(Names of Defendants)

(Each named party must be numbered,
and all names must be printed or typed)

14-846
(Case Number)

CIVIL COMPLAINT

FILED
SCRANTON

MAY - 2 2014

PER _____
       DEPUTY CLERK

TO BE FILED UNDER: ✓ 42 U.S.C. § 1983 - STATE OFFICIALS
                   ___ 28 U.S.C. § 1331 - FEDERAL OFFICIALS

I. **PREVIOUS LAWSUITS**

A. If you have filed any other lawsuits in federal court while a prisoner, please list the caption and case number including year, as well as the name of the judicial officer to whom it was assigned:

I have not filed any other lawsuit's against any state entity prior to this incident.

1

## II. EXHAUSTION OF ADMINISTRATIVE REMEDIES

In order to proceed in federal court, you must fully exhaust any available administrative remedies as to each ground on which you request action.

A. Is there a prisoner grievance procedure available at your present institution? √ Yes ___ No

B. Have you fully exhausted your available administrative remedies regarding each of your present claims? √ Yes ___ No

C. If your answer to "B" is Yes:

1. What steps did you take? I had a preliminary hearing and suppression Hearing and subsequently proceeded to trial.

2. What was the result? My case was bound over for trial, my suppression motion was denied, I then proceeded to trial where I was found guilty.

D. If your answer to "B" is No, explain why not: I've given the Common Pleas Court of Dauphin County every opportunity to correct my constitutional violation.

## III. DEFENDANTS

(1) Name of first defendant: Darrin A. Bates
   Employed as Police Officer at Harrisburg Police Department
   Mailing address: 123 Walnut St. # 217, Harrisburg, PA. 17101-1693

(2) Name of second defendant: Nicholas Ishman #9 (Badge)
   Employed as Police Officer at Harrisburg Police Department
   Mailing address: 123 Walnut St. # 217, Harrisburg, PA. 17101-1693

(3) Name of third defendant: Joshua Hammer
   Employed as Police Officer at Harrisburg Police Department
   Mailing address: 123 Walnut St. # 217, Harrisburg, PA. 17101-1693

(List any additional defendants, their employment, and addresses on extra sheets if necessary)

## IV. STATEMENT OF CLAIM

(State here as briefly as possible the facts of your case. Describe how each defendant is involved, including dates and places. Do not give any legal arguments or cite any cases or statutes. Attach no more than three extra sheets if necessary.)

1. Harrisburg Bureau Police Officer ("HBP") Darrin A. Bates ("Bates"), is a member of the Street Crime Unit ("SCU"), in Harrisburg, was partnered with Dauphin County Probation Officer Travis Banning ("Banning"), on the night of April 6, 2012

into the early hours of April 7. (Cont'd on page 3a)

2. "HBP" officer Ishman unlawfully seized and arrested Robertson by seizing him at gunpoint directing him to the ground, and handcuffing him behind his back and Terry frisking him placing Robertson in his custody and the overwhelming police presence. Ishman did not possess a (cont'd on page 3C)

3. "HBP" officer Hammer participated and conspired in the unlawful arrest and seizure of Robertson when he took Robertson's Pa. Photo Drivers License, which clearly identified Robertson, Hammer unlawfully retained Robertson's photo license in furtherance of the unlawful arrest and (cont'd on page 3C)

V. **RELIEF**

(State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.)

1. The plaintiff respectfully requests the Court to rule in his favor and order the defendant Bates to pay compensatory damages of $500,000.00, plus costs and fees, and punitive damages of $250,000.00.

2. The plaintiff respectfully requests the Court to rule in his favor and order the defendant Ishman to pay compensatory damages of $100,000.00, plus costs and fees, and as well as punitive damages of $50,000.00.

3. The plaintiff respectfully requests the Court to rule in his favor and Order the Defendant Hammer to pay compensatory damages of $50,000.00, plus costs and fees, as well as punitive damages of

[Claim One Cont'd] At some point unknown Banning relayed information to Bates of a individual he believed to be wanted by the HBP, a "Corey Sellers may be in the area of 17 Row Hall Manor and was to be traveling and had been seen traveling with Kashif Robinson ["Robertson"], in a vehicle described as a Chrysler product, green in color." Bates drove both h and Banning in a unmarked white Tahoe, to the area of 17 Row Hall Manor to inquire about the information received by Banning from his alleged confidential informant.

    The officer's believed Sellers had a criminal complaint warrant for simple assault but did not personally check to comfirm the status of said warrant prior to going to Hall Manor in the area of 17 Row. No description had been given of Robertson nor was he suspected of any illegal activity. The description provided from Banning of Sellers was a black male, 5'9 to 5'10, thinner build, Banning allegedly, was familiar with Sellers, however, Bates was not. While in the area of 17 Row Hall Manor, at about 12:30 a.m. the officer's came upon a green Chrysler parked in front of 16 Row Hall Manor, unoccupied, parked reversed with the license plate not visible to the street. Bates then drove a short ways further and parked in front of 12 Row, and began surveillance of the suspected vehicle assumed to be owned by Robertson.

    Approximately, ten to fifteen minutes later the officers saw two black males walking from the area of 17 Row, one of the males happened to fit the vague description of Sellers, while the other male was taller and more stout in build, according to Banning. The males approached the suspected vehicle the thinner male entering the passenger side, and the larger male briefly entering the driver side and exiting, going to the rear of the vehicle, then opening the trunk. At this point the passenger exits the vehicle to speak with an unknown female, who both then re - entered the vehicle the male in the front passenger side, and the female in the rear passenger side. To this point neither Bates or Banning could identify either male, no criminal activity had been witnessed by either officer, and none of the information was corroborated other than finding a vehicle fitting the vague description, which Banning admittedly, confirms to it being a busload of green Chrysler in the area.

    Bates then radioed to backup officers other SCU members, that he identified Sellers as the front passenger of the vehicle, and directed

the supporting officers to approach Robertson at gunpoint to identify him. At which time Robertson was approached by HBP and SCU member Nicholas Ishman # 9 ["Ishman"], at gunpoint, who directed him to put his fucking hands up, and get on the ground while at the rear of his vehicle, which Robertson complied with all the officer's commands.

Ishman then approached Robertson pointing his gun at him pushing Robertson to the ground chest first, then handcuffing him behind his back, preceding to **Terry frisk** him, while inquiring if he were Corey. Robertson denied being Sellers and advised Ishman that his license was in his back pocket and his name was Kachif Robertson. At this point all officers converged on Robertson's vehicle including Bates and Banning blocking in the front of the Chrysler, Sellers then fled from the vehicle where he was then tased and taken into custody after a short run. Sellers was then identified by Banning and Officer Fustine.

However, Bates released the unknown female because he had no suspicion of her and never handcuffed or obtained her information to identify her. Robertson, meanwhile remained in custody while evidentally Ishman handed Robertson's Pa. Photo Drivers License to HBP officer Joshua Hammer ["Hammer"]. Robertson was detained based on a racially based theory that because he was a black male Bates was unsure if he was Sellers or not, although, Banning excluded Robertson from matching the weak description of Sellers and assumed the passenger fit said description. Hammer then decided to to his police vehicle with Robertson's photo license to run Robertson's name through NCIC, AOPC, and Metro to check for warrants without possessing any reasonable suspicion that Robertson was currently or previously engaged with criminal activity. Robertson remained in handcuff's in custody of Bates and a unknown probation officer seated on the street curb.

Allegedly, Robertson began to lean on his right side or back while attempting to reach into his front left pants pocket trying to push the tip of a plastic bag, while talking to a PO standing next to him, and Bates standing two feet behind him. Bates using a flashlight shined his light onto Robertson's pants pocket with two [2] fingers grabbing ahold of the bag removing it from his pocket under the aasumption the bag was drug paraphernalia. Bates concluded the contents of the bag to contain suspected crack cocaine and conducted a further search of Robertson where two [2] cell phones, $905.00 of U.S. currency, and four [4] sandwich bags were discovered on Robertson's person.

Bates illegally searched Robertson's person without meeting each element of plain view to search and seize Robertson's property

[3B]

Bates created the unlawful seizure and arrest of Robertson by misleading assisting officers that he identified Sellers as the front passenger without ever making such confirmation or witnessing any current criminal activity to draw a reasonable suspicion of Robertson. Bates actions resulted in the unlawful arrest, false imprisonment, and illegal search and seizure, while using excessive force to seize Robertson without a reasonable suspicion or probable cause to enact such seizure or arrest. Bates acted under color of state law while violating Robertson's Federal rights of protection of both the Fourth and Fourteenth Amendment's of the U.S. Constitution.

[Claim Two Cont'd] reasonable suspicion that Robertson was engaged with any criminal activity, or that Robertson possessed a weapon to permit the intrusive **Terry frisk**. Ishman also did not possess the requisite probable cause to justify the unlawful arrest of Robertson. Ishman acted under color of state law while violating Robertson's Federal Constitutional rights of both the Fourth and Fourteenth Amendments.

[Claim Three Cont'd] seizure of Robertson in order to investigate Robertson's information without the requisite reasonable suspicion or probable cause to permit such investigation of Robertson. Hammer acted under color of state law while violating Robertson's Federal Constitutional rights of the Fourth and Fourteenth Amendments.

$50,000.00.

I declare under penalty of perjury that the foregoing is true and correct.

Signed this 25th day of April, 2014.

*Kashif Robertson*
(Signature of Plaintiff)

4

# FORMS TO BE COMPLETED BY PRISONERS FILING A CIVIL RIGHTS COMPLAINT UNDER 42 U.S.C. § 1983 or 28 U.S.C. § 1331

## COVER SHEET

THIS COVER SHEET CONTAINS IMPORTANT INFORMATION ABOUT FILING A COMPLAINT AND YOUR OBLIGATIONS IF YOU DO FILE A COMPLAINT. READ AND COMPLETE THE COVER SHEET BEFORE YOU PROCEED FURTHER.

*******************************************************************

The cost for filing a civil rights complaint is $350.00.

If you do not have sufficient funds to pay the full filing fee of $350.00 you need permission to proceed in forma pauperis. However, the court will assess and, when funds exist, immediately collect an initial partial filing fee of 20 percent of the greater of:

1) the average monthly deposits to your prison account for the past six months; or

2) the average monthly balance in your prison account for the past six months.

Thereafter, the institution in which you are incarcerated will be required to make monthly payments of 20% of the preceding month's deposits credited to your account until the entire filing fee is paid.

**CAUTION: YOUR OBLIGATION TO PAY THE FULL FILING FEE WILL CONTINUE REGARDLESS OF THE OUTCOME OF YOUR CASE, EVEN IF YOUR COMPLAINT IS DISMISSED BEFORE THE DEFENDANTS ARE SERVED.**

*******************************************************************

1. You shall file a complaint by completing and signing the attached complaint form and mailing it to the Clerk of Court along with the full filing fee of $350.00. (In the event attachments are needed to complete the allegations in the complaint, no more than three (3) pages of attachments will be allowed.) If you submit the full filing fee along with the complaint, you DO NOT have to complete the rest of the forms in this packet. **Check here if you are submitting the filing fee with the complaint form.** ____

2. If you cannot afford to pay the fee, you may file a complaint under 28 U.S.C. § 1915 without paying the full filing fee at this time by completing the following: (1) Complaint Form; (2) Application To Proceed In Forma Pauperis; and (3) Authorization Form. <u>You must properly complete, sign and submit all three standard forms or your complaint may be returned to you by the Clerk of Court.</u> **Check here if you are filing your complaint under 28 U.S.C. § 1915 without full prepayment of fees.** ✓

**Please Note:** If your case is allowed to proceed and you are awarded compensatory damages against a correctional facility or an official or agent of a correctional facility, the damage award will first be used to satisfy any outstanding restitution orders pending. Before payment of any compensatory damages, reasonable attempts will be made to notify the victims of the crime for which you were convicted concerning payment of such damages. The restitution orders must be fully paid before any part of the award goes to you.

**DO NOT DETACH THE COVER SHEET FROM THE REST OF THE FORMS**



Office of the Clerk
United States District Court
Middle District of Pennsylvania
William J. Nealon Federal BLDG & U.S. Courthouse
238 North Washington Avenue
P.O. Box 1148
Scranton, PA. 18501-1148

RECEIVED
SCRANTON
MAY 02 2014
PER _____
DEPUTY CLERK