UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KASHIF M. ROBERTSON, | : | CIVIL NO: 1:14-CV-00846 |
| | : | |
| Plaintiff | : | (Judge Kane) |
| | : | |
| v. | : | (Magistrate Judge Schwab) |
| | : | |
| DARRIN A. BATES, *et al.,* | : | |
| | : | |
| Defendants | : | |
| | : | |

## REPORT AND RECOMMENDATION

### I. Introduction.

Currently pending is the defendants' motion to dismiss the complaint, which raises Fourth and Fourteenth Amendment claims arising from the April 2012 arrest of the plaintiff, Kashif M. Robertson.  Because Robertson's claims are barred by the statute of limitations, we recommend that the motion to dismiss be granted.

### II. Background and Procedural History.

Robertson began this action by filing a complaint naming three Harrisburg Police Officers as defendants: (1) Officer Darrin A. Bates: (2) Officer Nicholas Ishman; and (3) Officer Joshua Hammer.   Robertson alleges that following facts in his complaint.

Late on the night of April 6, 2012 or the early morning of April 7, 2012, Travis Banning, a Dauphin County Probation Officer, relayed information to defendant Bates that an individual named Corey Sellers was wanted by the Harrisburg Police, that Sellers may be in the area of 17 Row Hall Manor, and that Sellers was seen traveling with Robertson in a green Chrysler.  Banning was familiar with Sellers, but Bates was not.  Banning described Sellers as a black male, 5'9" to 5'10", with a thinner build.  He did not give a description of Robertson, and Roberston was not suspected of any criminal activity.   Although Bates believed that Sellers was wanted on a warrant for simple assault, he did not personally check to confirm the status of the warrant on Sellers.

Bates and Banning proceeded to the area of 17 Row Hall Manor.  At about 12:30 a.m. on April 7, 2012, Banning and Bates saw an unoccupied green Chrysler parked in front of 16 Row Hall Manor.  The license plate of the Chrysler was not visible from the street.  Bates parked a short distance away, in front of 12 Row Hall Manor, and began surveillance on the Chrysler.  According to Robertson, Banning later admitted that there were "a busload" of green Chryslers in the area.

About 10 to 15 minutes later, Bates and Banning saw two black males walking from the area of 17 Row Hall Manor.  According to Banning, one of the males fit the vague description of Sellers; the other was taller and stouter.  The two males approached the Chrysler, the thinner one then entered the passenger side,

and the larger one briefly entered the driver's side but then exited and opened the trunk of the Chrysler.  At that point, the passenger exited the vehicle, spoke to a female, and then he reentered the passenger side of the Chrysler and the female entered the rear passenger side.  Neither Banning nor Bates could identify either male, and they did not witness any criminal activity.

Nevertheless, Bates radioed to backup officers that he had identified Sellers as the front passenger of the vehicle, and he directed backup officers to approach Robertson at gunpoint to identify him.  While Robertson was at the rear of the Chrysler, defendant Ishman approached him at gunpoint, told him to "put his fucking hands up," and told him to get on the ground.  Robertson complied, and Ishman pushed him to the ground chest first, handcuffed him behind his back, frisked him, and asked if he was "Corey."  Robertson denied being Sellers, told Ishman his name, and told him that his license was in his back pocket.  At that point, more officers, including Bates and Banning, converged on the Chrysler and blocked the front of the Chrysler.  Sellers then fled from the vehicle, but after a short run, he was taken into custody.  At that point, Officers Banning and Fustine identified Sellers.

Although Bates released the unknown female, Robertson remained in custody while Ishman gave Robertson's driver's license to Hammer.  According to Robertson, he was detained "based on a racially based theory that because he was a

black male Bates was unsure if he was Sellers or not, although, Banning excluded Robertson from matching the weak description of Sellers and assumed the passenger fit said description." Even though there was no reasonable suspicion that Robertson was involved in criminal activity, while Robertson remained seated on the curb in handcuffs, defendant Hammer ran his name through various databases to check for warrants.

While Hammer was checking for warrants, Bates, who was standing two feet behind Robertson, allegedly saw Robertson lean to his right and attempt to reach into his left front pants pocket and push the tip of plastic bag into the pocket. Bates then grabbed the bag with two fingers and removed it from Robertson's pocket. After concluding that the bag contained what was suspected to be crack cocaine, Robertson was arrested and Bates conducted a further search of Robertson and discovered two cells phones, $905.00, and four sandwich bags.

Robertson claims that the defendants violated his Fourth and Fourteenth Amendment rights by unlawful seizing and arresting him, illegally frisking and searching him, and by using excessive force in violation of the Fourth and Fourteenth Amendments. He is seeking compensatory and punitive damages.

After his arrest, Robertson was charged with various drug and gun violations. See Docket in *Commonwealth v. Robertson*, MJ-12205-CR-0000162-

2012.[1]  On April 7, 2012, a criminal complaint was filed against Robertson, and a

Magisterial District Judge conducted a preliminary arraignment and set bail, but

Robertson was detained because he was unable to post bail. *Id.* and Docket in

*Commonwealth v. Robertson,* CP-22-CR-0002526-2012.[2]  A preliminary hearing

---

[1] The criminal docket sheets from the Magisterial District Judge Court, the Court
of Common Pleas, the Superior Court, and the Supreme Court of Pennsylvania
regarding Robertson's criminal case are available on the website of the Unified
Judicial System of Pennsylvania: http://ujsportal.pacourts.us.  The court may
take judicial notice of adjudicative facts that are not subject to reasonable
dispute because they are "generally known within the trial court's territorial
jurisdiction" or because they "can be accurately and readily determined from
sources whose accuracy cannot reasonably be questioned." Fed.R.Evid.
201(b)(2).  The state docket sheets from Robertson's criminal case are public
record of which we can take judicial notice. *See Wilson v. McVey*, 579 F. Supp.
2d 685, 688 (M.D. Pa. 2008)(taking judicial notice of court docket); *S. Cross
Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 426
(3d Cir. 1999)(stating that court "may take judicial notice of another court's
opinion—not for the truth of the facts recited therein, but for the existence of the
opinion, which is not subject to reasonable dispute over its authenticity").

[2] The Fourth Amendment requires that when an individual is arrested without a
warrant, a judicial officer must determine, within a reasonable time (usually 48
hours), whether there is probable cause to hold the individual. *Cnty. of Riverside v.
McLaughlin*, 500 U.S. 44, 56 (1991); *Gerstein v. Pugh*, 420 U.S. 103, 126 (1975).
Under Pennsylvania law, when an individual has been arrested without a warrant
for a felony, "a complaint shall be filed against the defendant and the defendant
shall be afforded a preliminary arraignment by the proper issuing authority without
unnecessary delay." Pa. R.Crim. P. 518(a)(1).  An "Issuing Authority" "is any
public official having the power and authority of a magistrate, a Philadelphia bail
commissioner, or a magisterial district judge." Pa. R.Crim P. 103.  At the
preliminary arraignment, the defendant is given a copy of the criminal complaint,
the issuing authority informs the defendant of certain rights, and the issuing
authority generally schedules a preliminary hearing. Pa.R.Crim.P. 540(c), (f), &
(g).  Further, when there has been a warrantless arrest,"unless the issuing authority
makes a determination of probable cause, the defendant shall not be detained."

was held in May of 2012, and a formal arraignment in July of 2012. *Id.*[3]  Robertson

filed a motion to suppress evidence seized from him on April 7, 2012. *See*

*Commonwealth v. Robertson,* No. 1730 MDA 2013, slip op. at *5 (Pa. Super. Ct.

Dec. 16, 2014).  After a hearing, the suppression court denied that motion. *Id.*

Robertson's first trial ended in a mistrial, but in September of 2013, after a second

trial, he was convicted of possession with intent to deliver, possession of drug

paraphernalia, and possession of a controlled substance. *Id.* at *1, *7.  Robertson

was sentenced to an aggregate term of incarceration of one to three years to be

---

Pa.R.Crim.P. 540(e).  "After the preliminary arraignment, if the defendant is detained, the defendant shall be given an immediate and reasonable opportunity to post bail, secure counsel, and notify others of the arrest." Pa. R.Crim. P. 540(h). "Thereafter, if the defendant does not post bail, he or she shall be committed to jail as provided by law." *Id.*

[3] At the preliminary hearing, the defendant may generally present evidence, call witnesses, and cross examine witnesses. *See* Pa. R. Crim. P. 542(c).  Further, "the issuing authority shall determine from the evidence presented whether there is a *prima facie* case that (1) an offense has been committed and (2) the defendant has committed it." Pa. R. Crim. P. 542(d).  "Pennsylvania's requirement that a criminal prosecution may not go forward unless the state presents evidence constituting a *prima facie* case of guilt before a magistrate at the time of the preliminary hearing is not necessary to satisfy the requirements of the Fourth Amendment under *Gerstein* and *County of Riverside*." *Stewart v. Abraham*, 275 F.3d 220, 231 (3d Cir. 2001).  Pennsylvania's decision "to impose this additional requirement" is not constitutionally mandated. *Id.*  In Pennsylvania, a formal arraignment, at which the defendant is advised of certain rights, is generally held "no later than 10 days after the information has been filed." Pa.R.Crim.P. 571.  Although the preliminary arraignment and the arraignment "both are administrative proceedings at which the defendant is advised of the charges and the right to counsel, the preliminary arraignment occurs shortly after an arrest before a member of the minor judiciary, while an arraignment occurs in the court of common pleas after a case is held for court and an information is filed." Comment to Pa.R.Crim.P. 103.

followed by a two-year term of probation. *Id.* at *7.  In December of 2014, the

Superior Court of Pennsylvania affirmed the judgment of sentence, *id.* at *26, and

in June of 2015, the Supreme Court of Pennsylvania denied Robertson's petition

for allowance of appeal. See Docket in *Commonwealth v. Robertson,* 117 MAL

2015.

Although Robertson was in state prison when he began this action, in

September of 2015, he informed the court of his new address, and based on that

notice, it appears that he has served the incarceration portion of his sentence and is

no longer in prison.

## III. Discussion.

### A.  Motion to Dismiss and Pleading Standards.

In accordance with Fed.R.Civ.P. 12(b)(6), the court may dismiss a complaint

for "failure to state a claim upon which relief can be granted."  When reviewing a

motion to dismiss, "[w]e must accept all factual allegations in the complaint as

true, construe the complaint in the light favorable to the plaintiff, and ultimately

determine whether plaintiff may be entitled to relief under any reasonable reading

of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010).  In

making that determination, we "consider only the complaint, exhibits attached to

the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.

"A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a)." *I.H. ex rel. D.S. v. Cumberland Valley Sch. Dist.*, 842 F. Supp. 2d 762, 769-70 (M.D. Pa. 2012). "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677-78 (2009). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the plaintiff's claim is and of the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Detailed factual allegations are not required, but more is required than labels, conclusions, and a formulaic recitation of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). "A complaint has to "show" such an entitlement with its facts." *Id.*

In considering whether a complaint fails to state a claim upon which relief can be granted, the court must accept as true all well-pleaded factual allegations in the complaint, and all reasonable inferences that can be drawn from the complaint must be construed in the light most favorable to the plaintiff. *Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.,* 20 F.3d 1250, 1261 (3d Cir. 1994). But a

8

court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).

Following *Twombly* and *Iqbal,* a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Santiago v. Warminster Tp.,* 629 F.3d 121, 130 (3d Cir. 2010)(quoting *Iqbal,* 556 U.S. at 675 & 679).

A complaint filed by a *pro se* litigant is to be liberally construed and "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson,* 551 U.S. at 94 (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). Nevertheless, "pro se litigants still must allege

sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* complaint must recite factual allegations that are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

### B. Robertson's Claims Are Barred by the Statute of Limitations.

Robertson brings his claims pursuant to 42 U.S.C. § 1983. "Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." *Shuman v. Penn Manor School Dist.,* 422 F.3d 141, 146 (3d Cir. 2005). Section 1983 "does not create any new substantive rights but instead provides a remedy for the violation of a federal constitutional or statutory right." *Id.* Section 1983 requires "'both a deprivation of a federally protected right and that this deprivation was committed by one acting under color of state law.'" *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005)(quoting *Lake v. Arnold*, 112 F.3d 682, 689 (3d Cir. 1997)).

The defendants contend that Robertson's claims are bared by the statute of limitations. The statute of limitations is an affirmative defense and the burden of establishing its applicability rests with the defendants. *Bradford-White Corp. v.*

10

*Ernst & Whinney*, 872 F.2d 1153, 1161 (3d Cir. 1989).  Nevertheless, a motion to dismiss may be granted on the basis of the statute of limitations if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Bethel v. Jendoco Construction Corp.,* 570 F.2d 1168, 1174 (3d Cir. 1978)(motion to dismiss); 5A Wright & Miller, *Federal Practice and Procedure* §1368 (2d ed. 1990)("If the affirmative defense clearly is established in the pleadings, as, for example, when a statute of limitations defense is apparent on the face of the complaint and no question of fact exists, then a judgment on the pleadings may be appropriate.").

"A section 1983 claim is characterized as a personal-injury claim and thus is governed by the applicable state's statute of limitations for personal-injury claims." *Dique v. New Jersey State Police*, 603 F.3d 181, 185 (3d Cir. 2010).  Pennsylvania, the applicable state in this case, mandates a two-year statute of limitations for personal injury claims. 42 Pa.C.S. § 5524(2).  Thus, a § 1983 claim arising in Pennsylvania is subject to a two-year statute of limitations. *Fitzgerald v. Larson*, 769 F.2d 160, 162 (3d Cir. 1985).

In this case, although the complaint was not filed until May 2, 2014, the complaint is dated April 25, 2014.  Giving Robertson the benefit the prisoner-mailbox rule, which provides that a document is deemed filed on the date it is given to prison officials for mailing," *Pabon v. Mahanoy*, 654 F.3d 385, 391 (3d

11

Cir. 2011), we will use April 25, 2014 as the date this case was filed.  Thus, absent

tolling, if Robertson's claims accrued more than two years before that date (i.e.,

before April 25, 2012), they are barred by the statute of limitations.  We begin by

determining when Robertson's causes of action accrued.

Federal law governs when a cause of action accrues. *Dique*, 603 F.3d at 185.

A § 1983 cause of action "'accrues, and the statute of limitations commences to

run, when the wrongful act or omission results in damages.'" *Id.* at 185-86

(quoting *Wallace v. Kato*, 549 U.S. 384, 391 (2007)).  In other words, the cause of

action accrues "when the plaintiff has 'a complete and present cause of action,'

that is, when 'the plaintiff can file suit and obtain relief.'" *Wallace*, 549 U.S. at 388

(citations omitted).  Thus, "[u]nder federal law, a cause of action accrues ""when

the plaintiff knew or should have known of the injury upon which the action is

based.'"" *Montanez v. Sec'y Pennsylvania Dep't of Corr.*, 773 F.3d 472, 480 (3d

Cir. 2014)(quoting *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009), which in turn

was quoting *Sameric Corp. v. City of Philadelphia,* 142 F.3d 582, 599 (3d

Cir.1998)).

Here, Robertson knew of his arrest, the search, and the allege use of force on

April 7, 2012, the date of the arrest.  In the false arrest context, the cause of action

accrues and the statute of limitations normally commences to run from the date of

the arrest. *Id.* at 388-89.  But when a person is subject to false imprisonment,

which is detention without legal process, after an arrest, the limitations period does

not begin to run until the false imprisonment ends, which is when the person is

held subject to legal process. *Id.* at 389-90 (observing that the tort of false

imprisonment is subject to a "distinctive" accrual rule derived from the reality that

victim may not be able to bring suit until after the imprisonment without legal

process ends and that once legal process is instituted the action becomes one of

malicious prosecution for the wrongful institution of the legal process).  Based on

these principles, the Supreme Court held that where an arrest is followed by

criminal proceedings, the statute of limitations as to a Fourth Amendment false-

arrest claim begins to run at the time the plaintiff becomes detained pursuant to

legal process. *Id.* at 397.  Similarly, a Fourteenth Amendment selective

enforcement claim based on an arrest generally accrues no later than when the

plaintiff was detained pursuant to legal process. *See Dique,* 603 F.3d at 188.

Robertson contends that the statute of limitations on his arrest claims did not

begin to run until either his formal arraignment on July 13, 2012 or, at the earliest,

his preliminary hearing on May 22, 2012.  If either of those dates are the date when

the statute of limitations began to run, Robertson's arrest claims are not barred by

the two-year statute of limitations.  But in this case, on April 7, 2012, a criminal

complaint was filed against Robertson and a Magisterial District Judge conducted a

preliminary arraignment and set bail, but Robertson was detained because he was

unable to post bail. *See* Dockets in *Commonwealth v. Robertson*, MJ-12205-CR-0000162-2012. and *Commonwealth v. Robertson,* CP-22-CR-0002526-2012.  This is the date that Robertson became held pursuant to legal process, and, thus, absent tolling, this is the date that the statute of limitations began to run.

Robertson contends that the statute of limitations should be equitably tolled because he was continuously incarcerated from the date of his arrest and because he was held at institutions that did not provide "blank or example copies of § 1983 complaint forms" and he had to write this court and request blank forms, which he did on March 18, 2014 and April 4, 2014. *Doc. 31* at 9.

Unless inconsistent with federal law, state law governs whether the statute of limitations should be tolled. *Dique*, 603 F.3d at 185.  "Pennsylvania law recognizes that 'in some circumstances, although the right to institute suit may arise, a party may not, despite the exercise of diligence, reasonably discover that he has been injured.'" *Haugh v. Allstate Ins. Co.,* 322 F.3d 227, 231 (3d Cir. 2003)(quoting *Crouse v. Cyclops Industries,* 745 A.2d 606, 611 (Pa. 2000)).  Under Pennsylvania law, the statute of limitations may be tolled by the discovery rule. *Mest v. Cabot Corp.,* 449 F.3d 502, 510 (3d Cir. 2006).  "The discovery rule tolls the accrual of the statute of limitations when a plaintiff is unable, *"despite the exercise of due diligence,* to know of the injury or its cause." *Id.* (emphasis in original)(quoting *Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.*, 468 A.2d 468, 471 (Pa.

14

1983)).  "Under the rule, even if a plaintiff suffers an injury, the statute of

limitations does not begin to run until 'the plaintiff knows, or reasonably should

know, (1) that he has been injured, and (2) that his injury has been caused by

another party's conduct.'" *Id.* (quoting *Debiec v. Cabot Corp.,* 352 F.3d 117, 129

(3d Cir. 2003)).  But "[f]or the statute of limitations to run, a plaintiff need not

know the 'exact nature' of his injury, as long as it objectively appears that the

plaintiff 'is reasonably charged with the knowledge that he has an injury caused by

another.'" *Id.* at 510-11 (quoting *Ackler v. Raymark Indus., Inc.,*551 A.2d 291, 293

(Pa.Super.Ct. 1988)); *see also Brawner v. Educ. Mgmt. Corp.,* 513 F. App'x 148,

151 (3d Cir. 2013) (stating that knowledge of every fact necessary to succeed on a

claim is not required to trigger the accrual period).  Robertson does not invoke the

discovery rule, and based on the allegations in the complaint, Robertson was aware

that he was injured at the time of his arrest on April 7, 2012.

Under Pennsylvania law, the statute of limitations is not tolled merely

because the plaintiff is in prison. *See* 42 Pa. Cons. Stat. Ann. § 5533(a)("Except as

otherwise provided by statute, insanity or imprisonment does not extend the time

limited by this subchapter for the commencement of a matter.").  Further, other

than the discovery rule, "[i]n Pennsylvania, judicial extensions of the statute of

limitations are expressly forbidden absent fraud or its equivalent." *Poole v. Marks*,

441 F. App'x 854, 857 (3d Cir. 2011)(citing 42 Pa. Cons.Stat. Ann. § 5504(a) and

15

*Aivazoglou v. Drever Furnaces,* 613 A.2d 595, 598 (Pa. Super. Ct. 1992)).

Because Robertson does not assert fraud or its equivalent, he is not entitled to

equitable tolling under Pennsylvania law.

Moreover, even if we applied the federal standard for equitable tolling,

Robertson would not qualify for equitable tolling.  "Under the more lenient federal

standard, which applies when use of the state court's rules would be contrary to

federal law, '[e]quitable tolling is appropriate in three general scenarios: (1) where

a defendant actively misleads a plaintiff with respect to her cause of action;

(2) where the plaintiff has been prevented from asserting her claim as a result of

other extraordinary circumstances; or (3) where the plaintiff asserts her claims in a

timely manner but has done so in the wrong forum." *Poole,* 441 F. App'x at 857

(quoting *Lake v. Arnold,* 232 F.3d 360, 370, n.9 (3d Cir. 2000)).  Robertson

contends that he is entitled to equitable tolling because he was housed at

institutions that did not provide § 1983 complaint forms, a circumstance that he

characterizes as extraordinary.  The lack of a § 1983 complaint form, however, is

not an extraordinary circumstance especially since Robertson could have filed his

complaint without using a complaint form.  After all, "[e]quitable tolling is a rare

remedy to be applied in unusual circumstances, not a cure-all for an entirely

common state of affairs." *Wallace*, 549 U.S. at 398.  Further, to qualify for

equitable tolling, a party must also have exercised due diligence in pursuing and

preserving his claim. *Omar v. Blackman*, 590 F. App'x 162, 166 (3d Cir. 2014). Here, according to Robertson, he waited until March 18, 2014, a mere 21 days before the statute of limitations expired, before writing to the court to request a complaint form.  That is not due diligence.

In sum, Roberston is not entitled to equitable tolling, and his claims are barred by the statute of limitations.  Given that conclusion, we need not, and do not, address the defendants' other arguments for why Robertson's claims should be dismissed.

## IV.  Recommendations.

Based on the foregoing, it is recommended that the defendants' motion (doc. 24) to dismiss the complaint be granted.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.

17

The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this  2nd day of November, 2015.


**_S/Susan E. Schwab_**
Susan E. Schwab
United States Magistrate Judge